Joy WARD, Individually and as Guardian
ad Litem of Jacob R. Kinser,
Plaintiff–Appellee,

v.

Richard GORDON, M.D.;  United States
of America, Defendants–Appellants.

No. 91–36034.

United States Court of Appeals,
Ninth Circuit.

Submitted June 10, 1993 *.

Decided July 23, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument.   Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Roger D. Einerson, Asst. Director, Brendan F. Flanagan, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Christopher L. Otorowski, Law Offices of Christopher L. Otorowski, Bainbridge Island, WA, for plaintiffs-appellees.

Before: FARRIS, FERGUSON, and D.W. NELSON, Circuit Judges.

FARRIS, Circuit Judge:

Richard Gordon and the United States appeal interlocutorily the district court's order reinstating Lieutenant Colonel Richard Gordon, M.D., as a defendant in a medical malpractice action and refusing to substitute the United States in his place. We consider the interrelationship of the Federal Tort Claims Act, the Federal Employees Liability Reform and Tort Compensation Act, the Gonzalez Act, and the State of Washington's "scope of employment" and "borrowed servant" doctrines. We vacate the order of the district court and remand for substitution of the United States as a party defendant and for appropriate proceedings under the FTCA.

## I.

Joy Ward initiated this medical negligence action in her individual capacity and on behalf of her son, Jacob Kinser, against Richard Gordon, M.D., and other defendants. At the time of the alleged negligence, Gordon, an active-duty officer in the United States Army, was enrolled in a six-month residency program at Children's Hospital and Medical Center, a private health care facility, where Gordon treated Jacob Kinser.

The United States Attorney for the Western District of Washington certified that Gordon was acting within the scope of his employment as an employee of the United States at the time of the alleged negligence. The suit was then removed to federal district court pursuant to 28 U.S.C. § 2679(d)(2) (1988). The district court initially ordered the substitution of the United States in place of Gordon as a defendant, but it subsequently vacated that order, reinstated Gordon, and remanded the action to state court. On reconsideration, the district court vacated the remand but declined to resubstitute the United States.

The district court found that Gordon was a "borrowed servant" under Washington law and that he therefore could not have been working within his capacity as a government employee when the alleged malpractice occurred. Consequently, it held that the United States could not be substituted for Gordon.

■■■ The district court's ruling had the effect of denying Gordon immunity from suit and is therefore an immediately appealable collateral order. *See* 28 U.S.C. § 1291 (1988); *Mitchell v. Carlson,* 896 F.2d 128, 133 (5th Cir.1990). Whether Gordon acted within the scope of his employment is a mixed question of law and fact which we review de novo. *Meridian Intern. Logistics, Inc. v. United States,* 939 F.2d 740, 745 (9th Cir.1991). We also review de novo the district court's interpretation of state law, *Hartzell v. United States,* 786 F.2d 964, 966 (9th Cir.1986), and its interpretation of the relevant federal statutes, *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992).

## II.

Three statutes bear upon our resolution of this case.

### A. *Federal Tort Claims Act*

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1988), provides a remedy for persons injured by the tortious acts of an employee of the United States, where the employee was acting "within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

### B. *Federal Employees Liability Reform and Tort Compensation Act of 1988*

The Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679 (1988), was enacted as an amendment to the Federal Tort Claims Act. It limits the relief available to persons injured by government employees acting within the scope of their employment. The Liability Reform Act provides that "[t]he remedy against the United States" provided under § 1346(b) of the FTCA for the negligence "of any employee of the Government while acting within the scope of his ... employment is exclusive of any other civil action or proceeding for money damages ... against the employee." 28 U.S.C. § 2679(b)(1). It further provides that "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee ... is precluded...." *Id.*

The Act authorizes the Attorney General to certify that a United States employee was acting within the scope of his employment at the time of an incident giving rise to a civil claim.[1] 28 U.S.C. § 2679(d)(1) and (2). After certification, the action " 'shall be deemed an action against the United States' [under the FTCA] 'and the United States shall be substituted as the party defendant.' " *United States v. Smith,* 499 U.S. 160, 164 n. 5, 111 S.Ct. 1180, 1184 n. 5, 113 L.Ed.2d 134 (1991) (brackets in original) (quoting 28 U.S.C. § 2679(d)(2)).

Once the United States is substituted, the suit is to "proceed in the same manner as any action against the United States filed pursuant to section 1346(b) ... and shall be subject to the limitations and exceptions applicable" to actions under the FTCA. 28 U.S.C. § 2679(d)(4).

### C. *Gonzalez Act*

■■ The Gonzalez Act, or Medical Malpractice Immunity Act, 10 U.S.C. § 1089 (1988), is one of a series of immunity statutes enacted prior to the Liability Reform Act. It provides that a suit against the United States under the FTCA is the exclusive remedy for torts committed by military medical personnel acting within the scope of their government employment. 10 U.S.C. § 1089(a); *Smith,* 499 U.S. at 169–71, 111 S.Ct. at 1187. The Act does not create rights in favor of malpractice claimants; rather, it serves solely to protect military medical personnel from

---

1. The Attorney General, pursuant to his authority under 28 U.S.C. § 510 (1988), has delegated this authority to the United States Attorneys. 28 C.F.R. § 15.3 (1992).

malpractice liability. *Id.* 499 U.S. at 172, 111 S.Ct. at 1188.

Section 1089(f) permits the Secretary of Defense to indemnify or provide liability insurance to medical personnel acting in the scope of their duties while working for a nonfederal instrumentality such as a private hospital, "or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b)." 10 U.S.C. § 1089(f).

### III.

The district court held that Gordon was an employee of the United States, but that the Liability Reform Act did not immunize him because the Act applies only where a suit can be brought against the government under the FTCA. The court found that suit under the FTCA was not possible because in treating Jacob Kinser, Gordon acted as the "borrowed servant" of Children's Hospital.

In refusing to grant Gordon immunity, the district court reasoned, *inter alia,* that the passage of the Gonzalez Act indicated that Congress anticipated there would be situations where a military doctor assigned to a private hospital would be exposed to personal liability, and that this was such a situation.

In *Smith,* 499 U.S. at 162–75, 111 S.Ct. at 1183–90, the Supreme Court considered the interplay between the FTCA, the Liability Reform Act, and the Gonzalez Act. The claimants in *Smith* were precluded by an express provision of the FTCA from recovering against the United States for the alleged negligence of a military doctor.[2] The Court held that the Liability Reform Act makes the FTCA the exclusive mode of recovery for the tort of a government employee acting within the scope of his employment, even when the FTCA itself precludes Government liability. *Smith,* 499 U.S. at 166, 111 S.Ct. at 1185. Moreover, *Smith* specifically rejected the argument that precluding recovery for the doctor's tort worked an implied repeal of the

Gonzalez Act. *Id.* 499 U.S. at 171, 111 S.Ct. at 1187. The Court noted that the Liability Reform Act "*adds* to what Congress created in the Gonzalez Act, namely protection from liability for military doctors." *Id.* 499 U.S. at 172, 111 S.Ct. at 1188.

■ Unlike the situation presented in *Smith,* the claimant here, Ward, is precluded from FTCA recovery, if at all, not by an *explicit exception* to the FTCA, but by a *limitation* to the FTCA's waiver of sovereign immunity.[3] *Cf. Meyer v. Fidelity Sav.,* 944 F.2d 562, 567–68 (distinguishing between "explicitly excepted" claims and those that are "implicitly excluded", for purposes of determining "cognizability" under 28 U.S.C. § 2679(a)), *cert. granted sub nom. F.D.I.C. v. Meyer,* — U.S. —, 113 S.Ct. 1576, 123 L.Ed.2d 145 (1993) (No. 92–741), *and cert. denied,* — U.S. —, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). This distinction, however, makes no difference: actions to which the Liability Reform Act applies are to proceed in accordance with the FTCA and are "subject to the *limitations and exceptions* applicable" to FTCA actions. 28 U.S.C. § 2679(d)(4) (emphasis added). Thus, as long as Gordon acted within the scope of his government employment, the Liability Reform Act requires substitution of the United States, 28 U.S.C. § 2679(d)(1), without regard to whether the FTCA ultimately will permit recovery against the Government. *Cf. Wood v. United States,* 991 F.2d 915, 919 (1st Cir.1993) (en banc) (noting that the federal government's liability under the FTCA is not "perfectly congruent" with the federal employee's immunity under the Liability Reform Act).

### IV.

We next consider whether Gordon was a "borrowed servant," and if so, whether by virtue of that fact he necessarily acted out-

---

2. Several exceptions to the FTCA's waiver of governmental immunity are enumerated in 28 U.S.C. § 2680. In *Smith,* the FTCA precluded recovery against the United States because the alleged negligence occurred in a foreign country. *See* 28 U.S.C. § 2680(k).

3. The United States is liable under the FTCA "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. The FTCA's waiver of sovereign immunity is thus limited to situations where a private person would be liable.

side the scope of his government employment.

■ Whether an individual is a federal employee is a question of federal, not state, law. *Brandes v. United States,* 783 F.2d 895, 896 (9th Cir.1986). The FTCA defines "employee of the government" to include "members of the military or naval forces of the United States." 28 U.S.C. § 2671. The district court correctly concluded that Gordon was at all relevant times an employee under this statutory definition.

The United States argues that under the law of Washington, Gordon acted within the scope of his government employment. Ward argues that before the scope determination can be made, an inquiry must be made into whether Gordon acted as the "borrowed servant" of Children's Hospital at the time of the incident. She argues that if Gordon was a borrowed servant, he was acting outside the scope of his government employment and that, consequently, neither the FTCA nor the Liability Reform Act shield him from liability.

■ In *Brandes,* 783 F.2d at 897, we held that state agency law cannot be utilized in the initial determination of whether an individual works in some capacity for the government. Once it is established, however, that an individual works for the government, we resort to agency law to characterize the nature of the employment relationship. *Id.*

■ Under Washington law, four factors are significant in determining whether an individual has become the borrowed servant of a new master: (1) whether the "borrowing master" has the right to hire and fire the servant; (2) whether the "borrowing master" has the right to direct the manner in which the servant performs his duties; (3) whether the value of any equipment the servant brings with him has any bearing on the servant's continued relationship with the "borrowing master"; and (4) whether the "borrowing master" exclusively controls or has the exclusive right to control the servant. *See Pichler v. Pacific Mechanical Constructors,* 1 Wash.App. 447, 462 P.2d 960, 963 (1969). The key consideration is whether the Hospital had "control in fact or the right to control [Gordon's] physical conduct in the performance of his duties." *See id.*

■ The problem is that Gordon's duties were multifaceted. He was responsible for assisting or performing surgical/clinical procedures as assigned by and under the supervision of members of the staff of Children's Hospital, and at the same time, Gordon quite literally had a duty to his country: to complete satisfactorily the residency program. Fortunately for Gordon, his duties were such that they could be discharged concurrently.

The district court found that Gordon was acting as a borrowed servant under Washington law at the time of the alleged negligence. The United States assigned Gordon to the residency program at Children's and had the right to recall him. Gordon's immediate supervision in the performance of his duties as a surgical resident, however, came from employees of the Hospital, not from military personnel. The fact that Gordon remained subject to the Uniform Code of Military Justice and could be recalled by the Army does not undermine the district court's conclusion. *Cf. Hartzell,* 786 F.2d at 967–69 (stating that such factors are irrelevant to whether an employee acted within the scope of his employment for purposes of applying the FTCA).

The district court did not err in concluding that Gordon was a borrowed servant under Washington law.

## V.

■ The district court erred, however, in its analysis of the consequences that flow from Gordon's borrowed servant status. According to the district court, Gordon necessarily exceeded the scope of his employment with the government for purposes of § 2679(b)(1) by acting as the Hospital's servant. Not so. Military personnel act within the scope of their government employment if they act "in the line of duty." 28 U.S.C. § 2671; *Hartzell,* 786 F.2d at 964. " 'Line of duty' is defined in turn by the applicable state law of *respondeat superior." Lutz v. United States,* 685 F.2d 1178, 1182 (9th Cir. 1982). We thus look to Washington law to determine whether Gordon acted within the

scope of his government employment. *See Hartzell*, 786 F.2d at 966.

■ The standard applicable to "scope of employment" determinations in Washington was articulated in *Greene v. St. Paul–Mercury Indem. Co.*, 51 Wash.2d 569, 320 P.2d 311, 314 (1958):

> The test adopted ... for determining whether an employee is, at a given time, *in the course of his employment*, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, *or*, as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest.*

Gordon acted precisely and only as the government expected and required him to act. Gordon cannot be said to have exceeded the scope of his government employment or to have acted other than in the line of duty merely because he acted in the interests of Children's Hospital. The interests of Gordon's other "master," the United States Government, were not compromised, but rather were furthered—and furthered in a foreseeable and foreseen manner—by Gordon's service to the hospital. Gordon acted within the scope of his government employment. The Liability Reform Act therefore requires substitution of the United States in place of Gordon as a party defendant. 28 U.S.C. § 2679(b)(1).

## VI.

■ We next consider how Gordon's status as a borrowed servant of Children's Hospital affects Ward's ability to recover from the United States. The district court apparently assumed that Gordon's status necessarily would preclude a finding that the United States is liable for his negligence. This assumption is invalid. Although a "lending employer" such as the United States can escape liability for the negligence of a "loaned" servant, *see Stocker v. Shell Oil Co.*, 105 Wash.2d 546, 716 P.2d 306, 308 (1986) (en banc), nothing in the law of Washington compels that result. Washington law recognizes that an individual simultaneously can be the servant of both the "lending" and the "borrowing" master. *See Nyman v. MacRae*

*Bros. Constr. Co.*, 69 Wash.2d 285, 418 P.2d 253 (1966).

"A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." Restatement (Second) of Agency § 226 (1957) (*cited in Nyman*, 69 Wash.2d 285, 418 P.2d at 253). Where, as here, a servant acts within the scope of his employment for both masters, both may "be responsible for an act which is a breach of duty to one or both of them." Restatement (Second) of Agency § 226 cmt. a (1957).

On remand, the district court ultimately may be called upon to determine whether Gordon's status as a borrowed servant of Children's Hospital may be used by the Government as a shield to its own liability. If so, the Government likely will find itself in the difficult and unenviable position of arguing that although Gordon acted in furtherance of the government's business, *see Greene*, 51 Wash.2d 569, 320 P.2d at 314, and in the "line of duty," he nevertheless "abandoned" his service to the government, *see* Restatement (Second) of Agency § 226. Prudential concerns constrain us from addressing that argument today.

## VII.

Because Gordon acted within the scope of his employment with the United States, he is absolutely immune from suit, *see Smith*, 499 U.S. at 161–62, 111 S.Ct. at 1183, and the United States must be substituted as a party defendant. Gordon's status as a borrowed servant of Children's Hospital does not render his conduct outside the scope of his government employment; neither does it necessarily immunize the Government from liability for his medical negligence.

**VACATED** and **REMANDED.**