Erlinda Ubaldo CLAMOR, Plaintiff,

v.

Evangelos James KARAGIORGIS,
Defendant.

Civil No. 99–00462 SOM/BMK.

United States District Court,
D. Hawaii.

March 12, 2002.

Richard Turbin(argued), Honolulu, HI,
for Plaintiffs.

David Y. Suzuki, Burke, Sakai,
McPheeters, Bordner, Iwanaga & Estes,
Honolulu, HI, for Defendants.

*SECOND AMENDED ORDER DENY-
ING DEFENDANT'S MOTION TO
DISMISS COMPLAINT FOR LACK
OF SUBJECT MATTER JURISDIC-
TION OR, IN THE ALTERNATIVE,
TO REMAND TO STATE COURT*

MOLLWAY, District Judge.

**I. *INTRODUCTION.***

The Amended Order Denying Defen-
dant's Motion to Dismiss Complaint For
Lack of Subject Matter Jurisdiction Or, in
The Alternative, to Remand to State
Court, filed on November 6, 2001, is with-
drawn and the present order substituted in
its place. The only change is in the Intro-
duction section.

Plaintiff Erlinda Ubaldo Clamor sued Defendant Evangelos James Karagiorgis in Hawaii state court over an automobile accident. The Attorney General, pursuant to the Westfall Act, 28 U.S.C. §§ 2671–80, certified that Karagiorgis was acting in the scope of employment at the time of the accident, substituted the United States as the defendant, and removed the case to federal court. This court upheld the certification, but the Ninth Circuit held the certification erroneous and remanded the case to this court. Because Karagiorgis was not acting in the scope of employment at the time of the accident, he was resubstituted as the defendant. Karagiorgis now moves to dismiss this case for lack of subject matter jurisdiction, or, in the alternative, to remand this case back to state court. This court DENIES the motion.

## II. BACKGROUND FACTS.

Karagiorgis is a civilian employee of the United States Navy. Though a citizen of North Carolina, Karagiorgis is ordinarily assigned to the Naval Sea System Command ("NAVSEA") in Washington, D.C. For a few weeks in 1996, Karagiorgis was temporarily assigned to perform an "engineering reliability backfit" on the USS Los Angeles, which was moored at the Pearl Harbor Naval Base in Hawaii. Because no government quarters were available on the base, Karagiorgis arranged through a government travel agent to stay at a hotel. He also rented a car while in Hawaii. The cost of both the hotel and the car were reimbursed by the Navy.

On January 24, 1996, Karagiorgis finished his day's work on the USS Los Angeles, left the submarine, and began driving toward the exit of the base, which was some distance from the USS Los Angeles. While still just inside the base, he rear-ended a car that was stopped in traffic, injuring Plaintiff Erlinda Clamor, a citizen of Hawaii.

After first exhausting her no-fault benefits as required by Hawaii state law, Clamor filed a complaint against Karagiorgis in Hawaii state court. The United States certified that Karagiorgis was acting within the scope of his employment at the time of the accident, removed the case to federal court, and substituted the United States as defendant, pursuant to 28 U.S.C. § 2679(d). The United States then moved to dismiss the case for lack of subject matter jurisdiction, because Clamor had not exhausted her administrative remedies against the United States, as required by the Federal Tort Claims Act. 28 U.S.C. § 2675(a). This court concluded that Karagiorgis had been acting within the scope of his employment and that therefore the certification, removal, and substitution had been proper. This court granted the United States' motion to dismiss.

The Ninth Circuit reversed, concluding that Karagiorgis had not been acting within the scope of his employment at the time of the accident, and remanded the case to this court for further proceedings. *See Clamor v. United States*, 240 F.3d 1215 (9th Cir.2001). Because Clamor's suit was removed to this court solely on the basis of the Westfall Act, Karagiorgis argues that the Ninth Circuit's holding that the United States was improperly substituted requires this court to now dismiss the case for lack of subject matter jurisdiction or, in the alternative, to remand the case to state court.

### III. STANDARD OF REVIEW.

A court's subject matter jurisdiction may be attacked under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In evaluating this motion to dismiss, the court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and the court need not presume the truthfulness of the plaintiff's allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) (citations omitted). Clamor has the burden of proving this court has actual subject matter jurisdiction. *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction").

### IV. ANALYSIS.

Under the Westfall Act, the Attorney General or his designee may certify that a defendant who is a federal employee was acting within the scope of employment at the time of an alleged tort. 28 U.S.C. § 2679(d)(2) (certification by Attorney General); 28 C.F.R. § 15.3 (1995)(certification by designee). When, as here, the suit was originally filed in state court, the Attorney General, upon certification, removes the action to federal court. 28 U.S.C. § 2679(d)(2). The Attorney General substitutes the United States as the defendant in the suit and converts the suit into an action against the United States under the Federal Tort Claims Act. *Id.* Courts have disagreed about whether, if the Attorney General's certification is erroneous, a federal court continues to have jurisdiction over the action. If the federal court would have no other basis for subject matter jurisdiction, maintaining jurisdiction could raise problems under Article III of the Constitution, which limits federal jurisdiction. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 437, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995)(O'Connor, J., concurring); *id.* at 441, 115 S.Ct. 2227 (Souter, J., dissenting).

 This court is well aware that, "[p]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (citations and internal quotation marks omitted). However, it does not appear that constitutional issues can be completely ignored in this case.

 Clamor argues that this court need not consider the constitutional issue of whether it retains jurisdiction in spite of Karagiorgis' decertification because the court has diversity jurisdiction. The issue is far murkier than Clamor recognizes or admits. Clamor and Karagiorgis are indeed citizens of different states (Hawaii and North Carolina, respectively), and Clamor alleges damages exceeding $75,000.[1] *See* 28 U.S.C. § 1332. Howev-

---

1. Clamor's allegations as to jurisdictional amount are contained in her Memorandum in Opposition to Karagiorgis's Motion to Dismiss, not in her Complaint, as *ad damnum* clauses are prohibited in Hawaii in complaints filed in state court. *See* Haw.Rev.Stat. § 663–1.3. Karagiorgis disagrees that the value of Clamor's claim exceeds $75,000. As Clamor is the party asserting federal jurisdiction, she bears the burden of proving that her claim exceeds $75,000, *see In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir.2001), and she must do so

er, "diversity must exist at the time the original action was filed [in state court] as well as at the time the petition for removal is filed." *Petrop v. Lassen Art Publications, Inc.,* 939 F.Supp. 742, 744 (D.Haw. 1995) (citations omitted). In this case, diversity existed at the time the original action was filed in state court, but it is unclear whether diversity could be said to have existed at the time of removal. The United States was the sole defendant at the time of removal, and Clamor was not diverse from the United States. Removal was instead based on the federal question raised by the FTCA and on the presence of the United States as a party. This court has found no authority clearly supporting or denying the existence of diversity jurisdiction at the time of removal under these circumstances.

Out of concern over whether it may rely on diversity jurisdiction, this court considers whether it may retain jurisdiction over this case even in the absence of diversity jurisdiction. The circuits are split on this issue, with the Fourth, Fifth, and Third Circuits all holding that a district court must retain jurisdiction over a case following decertification and may not remand it to state court. *See Borneman v. United States,* 213 F.3d 819, 829 (4th Cir. 2000)("the district court may not thereafter remand the case to state court"); *Garcia v. United States,* 88 F.3d 318, 324 (5th

Cir.1996)("the action must remain in district court"); *Aliota v. Graham,* 984 F.2d 1350, 1356 (3d Cir.1993)("the district court has no authority to remand the case"). The Eleventh Circuit, after originally requiring remand, now holds that "it is within the district court's discretion to continue its jurisdiction over the case." *Green v. Hill,* 954 F.2d 694, 698 (11th Cir.1992), *withdrawn and superseded in part on reh'g,* 968 F.2d 1098, 1099 (11th Cir.1992). The D.C. Circuit and the First Circuit both hold that the district court must remand the case to state court. *See Haddon v. United States,* 68 F.3d 1420, 1427 (D.C.Cir.1995)(requiring the district court to remand); *Nasuti v. Scannell,* 906 F.2d 802, 814 (1st Cir.1990)(same). The Ninth Circuit has not yet ruled on the issue. *But see Clamor,* 240 F.3d at 1221 (Tallman, J., dissenting)("the district court need not remand to state court").

The Supreme Court touched upon the issue in *Lamagno.* That case resolved the question of whether a federal court could review an Attorney General's certification that a federal employee was acting within the scope of his employment, or whether the certification was not judicially reviewable. The Court found the certification to be judicially reviewable, but made no majority statement as to the effect of decerti-

---

by a preponderance of evidence. *See Singer v. State Farm Mutual Automobile Ins. Co.,* 116 F.3d 373, 375 (9th Cir.1997). It is not clear that she has met this burden. Even if the burden lies with Karagiorgis to prove that Clamor fails to meet the jurisdictional amount, the same standard (i.e., preponderance of the evidence) applies. *See id.* (when no specific amount is claimed in a complaint,

a defendant contesting the jurisdictional amount must establish the deficiency by a preponderance of the evidence). *Cf. Pachinger v. MGM Grand Hotel–Las Vegas, Inc.,* 802 F.2d 362, 364 (9th Cir.1986)(when the plaintiff specifies an amount of damages, a defendant challenging the amount must prove to a legal certainty that the claim is for less than the jurisdictional amount).

fication on federal jurisdiction. *See Lamagno*, 515 U.S. at 434, 115 S.Ct. 2227. In part IV of the decision, a plurality of the Court noted:

> If the certification is rejected, because the federal court concludes that the employee acted outside the scope of his employment, and if the tort plaintiff and the employee resubstituted as defendant are not of diverse citizenship ... the federal court will be left with a case without a federal question to support the court's subject-matter jurisdiction.

*Id.* at 434–35, 115 S.Ct. 2227 (Ginsburg, J., plurality). Although the plurality went on to say that a federal court could continue to exercise jurisdiction, this statement was not essential to the ruling. The Court did not need to decide the issue because *Lamagno* was originally filed as a diversity action in federal court. *See id.* at 437, 115 S.Ct. 2227 (O'Connor, J., concurring). Concluding that there would be no grave Article III problem with a continued exercise of federal jurisdiction, *see id.* at 435, 115 S.Ct. 2227 (Ginsburg, J., plurality), the plurality reasoned:

> There may no longer be a federal question once the federal employee is resubstituted as defendant, but ... there *was* a nonfrivolous federal question, certified by the local United States Attorney, when the case was removed to federal court.... Whether the employee was acting within the scope of his federal employment is a significant federal question—and the Westfall Act was designed to assure that this question could

be aired in a federal forum. Because a case under the Westfall Act thus "raises [a] question of substantive federal law at the very outset," it "clearly 'arises under' federal law, as that term is used in Art. III."

*Id.* (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983))(internal citation omitted).

The four dissenting members of the Court in *Lamagno* agreed that the case should remain in federal court, although for a different reason. The dissent believed that reading the statute as conclusively vesting the federal court with jurisdiction for the remainder of the case would avoid the potential Article III problems discussed by the plurality. *See Lamagno*, 515 U.S. at 441, 115 S.Ct. 2227 (Souter, J., dissenting). In light of this, at least eight of the nine justices in *Lamagno* appear to believe that a case, once certified by the Attorney General, must remain in federal court even if certification is deemed erroneous.[2] *See Garcia*, 88 F.3d at 324–25 ("the *Lamagno* dissent seems also to be of the view that a federal court must retain the action"); James D. Doster, Note, *The Westfall Act Before and After Gutierrez de Martinez v. Lamagno: Reviewability, Remand, and Article III–One Down, One to Go, and One that Should be Left Open*, 32 Ga. L.Rev. 181, 184–85 (1997)("eight, if not all nine, of the Justices were of the opinion that remand is prohibited"). However, because the plurality statement was dicta, and because the Court divided over the issue of whether prohibiting remand violat-

---

**2.** Justice O'Connor expressed no opinion on the issue, viewing its resolution as premature.

*See Lamagno*, 515 U.S. at 437, 115 S.Ct. 2227.

ed Article III, the issue was not conclusively resolved. *See id.* at 209.

Of the three circuit court cases decided after *Lamagno* was decided in 1995, *Borneman* and *Garcia* hold that the district court must retain jurisdiction, while *Haddon* holds that the district court must remand to state court. In *Garcia*, the Fifth Circuit found support for a federal court's retention of jurisdiction in a comparison of the language of different provisions of the Westfall Act. In 28 U.S.C. § 2679(d)(3), Congress addressed the situation in which the Attorney General has declined to certify an employee as having acted within the scope of his employment. In that instance, an employee may petition a court for such a certification. If the employee commences the petition in a state court, the United States may remove the matter to federal court. Subpart (d)(3) provides, "If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court." By contrast, subpart 2679(d)(2), which governs the situation in which the Attorney General has certified an employee, contains no express direction of remand in the event a court decertifies the employee.

The Supreme Court has held that, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted). *Accord In re Perroton*, 958 F.2d 889, 895 (9th Cir.1992). This rule is derived from "the sound general rule that Congress is deemed to avoid redundant drafting."[3] *Lamagno*, 515 U.S. at 444, 115 S.Ct. 2227 (Souter, J., dissenting). *See also Garcia*, 88 F.3d at 324 (derivation of rule). The Fifth Circuit interpreted the congressional failure to include a provision requiring remand in subpart (d)(2) as "deafening" evidence that remand was not required. Instead, the Fifth Circuit concluded that remand was prohibited by subpart (d)(2), which provides, "This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." *See Garcia*, 88 F.3d at 324.

The Fifth Circuit's reasoning was previously the subject of discussion in *Lamagno*. In a portion of the opinion in which a majority of the justices joined, *Lamagno* noted that the Westfall Act could plausibly be construed in more than one way. In *Lamagno*, the United States had argued that a district court's power to review certification was supported by the absence of any express statutory limitation on reviewability of certification, in contrast to the statutory provision stating that certification conclusively established removability.

---

**3.** The Supreme Court is generally "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier* *Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

The argument was that "Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution." *See Lamagno*, 515 U.S. at 432–34, 115 S.Ct. 2227. *Accord Aliota*, 984 F.2d at 1356. In the end, the majority in *Lamagno* concluded that, because the statute was reasonably susceptible to divergent interpretation, the Court "would adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render." *Id.* at 434, 115 S.Ct. 2227.

Even before *Lamagno*, the Ninth Circuit, in *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 744 (9th Cir. 1991), had inferred that a certification was subject to judicial review given the statute's comparative silence as to the conclusive effect of certification on substitution. Both *Lamagno* and *Meridian* implicitly invoked the rule against redundancy that the Fifth Circuit relied on in *Garcia*. Similarly, the absence in subpart (d)(2) of the "shall be remanded" language found in subpart (d)(3) manifests a congressional intent not to require remand under subpart (d)(2).

■ This court need not and does not decide here that it must retain jurisdiction over this case. Based on the reasoning in *Garcia*, this court concludes only that, at the very least, a federal court is not re-quired to remand a matter to state court following decertification. This court is not persuaded by the D.C. Circuit's conclusory assertion that, because "[t]he Court held that a district court has power to review the scope of employment issue under Section (d)(2), even though only Section (d)(3) explicitly authorizes such a review," "this reasoning also requires the district court to remand a Section (d)(2) case to state court, even though Section (d)(3) is the only provision that explicitly compels it to do so." *Haddon*, 68 F.3d at 1427. The *Haddon* court baldly "infer[red] the power to remand when there is certification under Section (d)(2) from the explicit power to do so under Section (d)(3)," *id.*, but offered no explanation as to how this inference follows from the *Lamagno* Court's directive to read the two subparts together.[4] *See id.* Even if the *Haddon* court's reading could find support in *Lamagno*, the D.C. Circuit does not explain how the "power to remand" that it infers becomes a *requirement* to remand. *See id.* This court need not determine whether it has the power to remand. It concludes only that it is not required to remand. *Accord Green*, 968 F.2d at 1098–99 (retracting a previous ruling requiring remand and instead ruling that a court has discretion to remand after decertification).

■ This court agrees with the *Lamagno* plurality that retaining this case poses no grave Article III problems. This case arises under federal law because it raised a question of substantive federal law at the very outset when the scope-of-employment

---

4. The *Haddon* court cites to the First Circuit's opinion in *Nasuti* as the origin of this inference, but the *Nasuti* court's inference was stated in a one-sentence footnote offering no explanation for its basis. *See Nasuti*, 906 F.2d at 814 n. 17.

issue was determined. *Clamor*, 240 F.3d at 1221 (Tallman, J., dissenting). *Accord Lamagno*, 515 U.S. at 435, 115 S.Ct. 2227 (Ginsburg, J., plurality). *See also* Roland B. Ninomiya, Casenote, *Under the Westfall Act, a Plaintiff Can Obtain Judicial Review of Attorney General's Certificationthat the Defendant–Employee was Acting Within the Scope of Her Employment: Gutierrez de Martinez v. Lamagno*, 4 Geo. Mason L.Rev. 485, 504–516 (1996)(no violation of Article III). *But see Lamagno*, 515 U.S. at 441, 115 S.Ct. 2227 (Souter, J., dissenting)(approaches the limits of Article III); Doster, *supra*, at 231–32 (violates Article III); Sandra S. Glover, Comment, *Article III and the Westfall Act: Identifying "Federal Ingredients,"* 64 U. Chi. L.Rev. 925, 942–43 (1997)(same).

Retaining this case is also consistent with "foreclos[ing] needless shuttling of a case from one court to another," which a majority of the *Lamagno* Court suggested was a goal Congress had when it enacted the Westfall Act. *See Lamagno*, 515 U.S. at 434 n. 10, 115 S.Ct. 2227. Keeping this case in federal court promotes "judicial economy, convenience and fairness to litigants" and makes it "reasonable and proper for the federal forum to proceed beyond the federal question to final judgment once it has invested time and resources on the initial scope-of-employment contest." *Id.* at 436, 115 S.Ct. 2227 (Ginsburg, J., plurality) (internal quotation marks omitted)(citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Borneman*, 213 F.3d at 819; *Garcia*, 88 F.3d at 325. This case came to this court in 1999, and the parties have certain assigned dates on the court's calendar. Remanding this case to state court would be inefficient because the parties would have to begin proceedings anew.

This court is well aware that statutes should ordinarily be construed to avoid constitutional questions, *see United States v. X–Citement Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), and that the court's construction of the Westfall Act may implicate constitutional issues to some extent. *See Lamagno*, 515 U.S. at 441, 115 S.Ct. 2227 (Souter, J., dissenting); *Haddon*, 68 F.3d at 1427. However, constitutional issues may be implicated when circumstances make that appropriate. *See Lamagno*, 515 U.S. at 417, 115 S.Ct. 2227 (O'Connor, J., concurring). The importance of construing statutes to avoid redundant drafting and the court's interest in judicial economy, convenience, and fairness compel this court to retain subject matter jurisdiction over this case. As noted above, this court need not and does not decide that retention is mandatory. Nor does this court decide that retention may instead lie in its discretion. The only conclusion necessary to this decision is the conclusion that remand is not mandatory.

## V. *CONCLUSION.*

For the foregoing reasons, this court denies Karagiorgis's motion to dismiss or, in the alternative, remand to state court.

IT IS SO ORDERED.

*Erlinda Ubaldo Clamor v. Evangelos James Karagiorgis*, Civil No. 99–00462 SOM–BMK; Second Amended Order Denying Defendant's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdic-